**LINK et al. v. GENERAL INS. CO. OF AMERICA.**

**No. 14378.**

District Court, W. D. Washington, N. D.

Feb. 24, 1948.

Bogle, Bogle & Gates, of Seattle, Wash., for libelants.

Skeel, McKelvy, Henke, Evenson & Uhlmann, of Seattle, Wash., for respondent.

FOLEY, District Judge.

Libel by Henry O. Link, E. W. Elliott and O. L. Grimes to recover on war risk policy issued by respondent, General Insurance Company of America.

The testimony as to the nature of the cargo aboard the Roustabout at the time of the collision is rather indefinite. We learn, however, from the witnesses that during a period of time including the month of May, 1942, the Roustabout was engaged in the service of the United States Navy in transporting from Seattle and nearby bases to war bases in southeastern Alaska, petroleum products, bombs, ammunition and other dry cargo for the use of the Armed Forces in carrying on the prosecution of the war with Japan. Her operations also included transporting from Alaskan bases to bases in Seattle and vicinity, such freight as was offered by the Navy or Coast Guard consisting generally of empty containers, oil drums, empty acetylene and oxygen tanks, damaged airplane motors, damaged airplanes, trucks, automobiles, torpedo cases and defective ammunition. The collision out of which this controversy arose occurred about 2:00 a. m. of May 11, 1942, off a place known to mariners as Campbell River Bluff opposite Campbell River which empties into Discovery Passage in Canadian waters.

Judge Bowen in ruling upon the exceptions to the libel (D.C., 56 F.Supp. 275) carefully considered American and English cases on the questions here involved. He referred to Queen Ins. Co. v. Globe & Rutgers Fire Ins. Co., 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402, as holding that in deciding whether marine loss is covered by a war risk clause two principles are to be considered. One is that we "generally are to stop our inquiries with the cause nearest to the loss." [56 F.Supp. 276.] The other is that for expediency and harmony in the marine insurance world, the American courts should follow the English courts' descisions. The Queen case arose out of a collision between merchant vessels in convoy and it was held that the loss could not be attributed to warlike operations.

The facts here are somewhat similar to those in Board of Trade v. Hain Steamship Co., Ltd., English Commercial Cases, vol. 35, p. 29, (1929) A.C. 534, the facts in that case being as follows:

"The respondents were the owners of a steamship, the Trevanion, which during the War was requisitioned by the Crown under the terms of the charterparty T.99, by which the Crown accepted responsibility for loss or damage which was the consequence of hostilities or warlike operations. On the night of December 25, 1918, after the Armistice had been concluded, the Trevanion was in collision with an American steamer, the Roanoke, the collision being due to the negligence of both vessels. At the time of the collision the Trevanion was admittedly not engaged in a warlike

operation. The respondents claimed damages from the Crown, and their claim was referred to arbitration. The arbitrator found as a fact that the Roanoke was engaged in a warlike operation at the time of the collision and that, although both vessels had been negligent, the respondents were entitled to recover on the ground that the damage was the result of a warlike operation. On appeal by special case Rowlett J. reversed the decision of the arbitrator, but his decision was reversed on appeal to the Court of Appeal." The Crown appealed to the House of Lords where the appeal was dismissed, the holding being that the collision was the consequence of a warlike operation.

In Yorkshire Dale Steamship Co., Ltd., v. Minister of War Transport, The Times Law Reports, June 5, 1942, p. 263, referred to by Judge Bowen as The Coxwold Case, Lord Porter reviewed English cases saying:

"(1) In this as in every other insurance problem the proximate cause is alone to be looked at. Ionides v. Universal Marine Insurance Company, (1863) 14 C.B.M.S. 259. (2) But the proximate cause is not necessarily the nearest in point of time; it is the dominant cause. Leyland Steamship Company, Limited v. Norwich Union Fire Insurance Society (34 The Times L. R. 221; (1918) A.C. 350, Samuel v. Dumas (40 The Times L.R. 375; (1924) A.C. 431). (3) In the case of a ship proceeding on a voyage which is not itself a warlike operation, absence of lights, sailing in convoy, and zigzagging are not separately or in combination a warlike operation, nor indeed is it a warlike operation to follow the course set by the naval officer in charge of the convoy. The Petersham and The Matiana (36 The Times L.R. 791; (1921) 1 A.C. 99). (4) The dimming or extinguishing of a shore light is a warlike operation, but if a ship engaged in a mercantile operation goes ashore because she is out of her reckoning, she is not lost by the warlike operation merely because she would most probably have realized and avoided the danger had the light been seen. Ionides v. Universal Marine Insurance Company (supra). (5) A ship carrying war stores from one war base to another is engaged on a warlike operation. The Geelong (39 The Times L.R. 133; (1923) A.C. 191). (6) A collision caused by a ship so engaged is caused by the warlike operation. Attorney-General v. Ard Coasters (37 The Times L.R. 692; (1921) 2 A.C. 141). (7) A collision solely caused by a ship engaged on a mercantile adventure is not caused by a warlike operation even though that ship collides with or is struck by one engaged on a warlike operation. The Clan Matheson (45 The Times L.R. 408; [1929] A.C. 514. (8) If the collision be caused both by the ship so engaged and by one not so engaged so that both were effective causes of the disaster the consequent loss is due to the warlike operation. Board of Trade v. Hain Steamship Company (45 The Times L.R. 550; (1929) A.C. 534). (9) The collision if due in whole or in part to the action of the ship engaged in a warlike operation does not cease to be caused by the warlike operation by reason of the fact that that action is negligent. The Warilda (39 The Times L.R. 333; (1923) A.C. 292)."

The concluding remarks of Lord Porter in the Coxwold case illustrate the principles which distinguish this case from the Queen Insurance and other cases cited by respondent. He summarized as follows:

"If the Coxwold had been on an ordinary mercantile voyage no doubt, as a result of the decisions in your Lordships' House, the risk would be a marine one, whether its cause was absence of lights, or sailing in convoy, or obeying the orders of the Commodore vessel, or inability to see the Neist Light because it was dimmed. But in the circumstances the cause of the Coxwold being at that place at that time in those conditions was her warlike operation and the loss was in my view not only in the course of but caused by that operation.

"That the Court of Appeal thought otherwise was, I venture to suggest, due to the importance which they attached to the arbitrator's finding as to the set of the tide as against the totality of circumstances on which he relied. Moreover, in my view, they did not give sufficient weight to the fact, as admitted and found, that the war-

like operation consisted in sailing from one war base to another."

At the time of the collision with the Eastern Prince and for some time prior thereto and thereafter, the Roustabout was a commissioned vessel in the United States Navy officered and manned with naval personnel. At no time during this period was she engaged in carrying commercial cargo. The Roustabout's operations and character differ from those of the Napoli of the Queen Insurance case and some of the other cases involving merchant ships.

Here the evidence shows the usual cargo carried by the Roustabout in both directions between Seattle and the Alaskan war bases. The fact that an officer and member of the crew testified that they could not specifically describe the cargo aboard the vessel at the time of the collision seems of little consequence. We have but little, if any, evidence describing the cargo aboard the Roustabout at the time of the collision but we are informed as to the nature of the cargo generally carried by the Roustabout on her return trips from Alaskan bases to Seattle. Considering the facts established by the evidence here as similar facts were considered in the Roanoke case (Board of Trade v. Hain Steamship Co., Ltd., supra), we have no right in law or in fact to assume without evidence that the Roustabout was not engaged on the duty of the service of which she formed part of the Navy.

The collision of the vessels Roustabout and Eastern Prince was due in part to the action of the Roustabout in a warlike operation. The damage to insureds' vessel, Eastern Prince, was a consequence of warlike operations of the Roustabout, a duly commissioned vessel of the United States Navy officered and manned by naval officers and crew and operated by the Navy in aid of the prosecution of the war with Japan. The collision was a result of mutual fault of both vessels.

The Court, having heard the testimony and having examined the proofs offered by the respective parties, and the cause having been submitted for decision, now finds the facts and states conclusions of law as follows:

Findings of Fact

1. That libelants, Henry O. Link and E. W. Elliott, are now and at all times herein mentioned were respectively the owner and bareboat charterer of the vessel called the Eastern Prince.

2. That respondent, General Insurance Company of America, is a corporation organized and existing under and by virtue of the laws of the State of Washington with its principal place of business in the Western District of Washington, Northern Division, and is authorized and licensed to make insurance contracts, including the insurance hereinafter referred to. That on May 4, 1942, respondent in consideration of an agreed premium paid therefor, issued its certain policy of insurance, No. MWR 1151, to libelants, wherein and whereby respondent insured libelants and the United States of America and agreed to assume and pay all loss or damage resulting to libelants and said vessel as a result of said vessel being in collision, together with general average, salvage and special charges and sue and labor expense incident thereto, consequent upon hostilities or warlike operations (loss payable to O. L. Grimes).

3. That on May 11, 1942, and for some time prior thereto, a state of war existed between the United States of America and the Empire of Japan and on said date, while said vessel, the Eastern Prince, was proceeding on a voyage from the Port of Seattle, Washington, to Prince Rupert, first port of call, with supplies and equipment for the Alaska Road up the inside passage to Alaska for the Elliott Steamship Company, and while off Campbell River Bluff opposite Campbell River was in collision with the United States tanker Roustabout; that at the time of said collision the USS Roustabout was a duly commissioned naval vessel of the United States of America employed solely for naval purposes as a regularly commissioned tanker of the United States Navy Department and officered by commissioned officers of the United States Navy and manned by a United States Navy crew, and armed with anti-aircraft guns and other armaments and ammunition for use in connection therewith. That the USS Roustabout

at the time of said collision was engaged in her aforesaid public employment and operated in connection with the prosecution of said war in the military and naval service of the United States of America in the transportation of military and naval supplies, to-wit, fuel oil, gasoline and other petroleum products, between military and naval bases on the west coast of the United States of America to military and naval bases of the United States in the Territory of Alaska for use by combatant naval vessels and aircraft of the United States of America; and that on southbound trips from said naval bases in the Territory of Alaska, the said USS Roustabout engaged in carrying cargo consisting of freight offered by the Navy or Coast Guard, empty containers, oil drums, empty acetylene and oxygen tanks, damaged airplane motors, damaged airplanes, trucks and automobiles, and at the time of said collision, the said vessel had aboard water ballast and miscellaneous dry cargo of the nature just above described.

4. That the site of the collision is a narrow channel under the International Rules.

5. That at the time of said collision the USS Roustabout was at fault as follows:

a. Failing to keep to the right of the channel;

b. Failing within sight of the Eastern Prince to indicate a change of course on her whistle;

c. Failing to keep a proper lookout in that the lookout aboard the Roustabout after sighting the red light of the Eastern Prince took no action concerning same and failed to notify the officer on the bridge of the whereabouts of the Eastern Prince.

6. That at the time of said collision the SS Eastern Prince was at fault as follows:

a. Failure to exhibit red and green navigation lights, view of the same being obstructed by deck load consisting of construction material, lumber, etc.

7. That libelants suffered loss for particular and general average charges and disbursements occasioned by said collision and the damages resulting to the Eastern Prince in consequence thereof in the sum of $11,031.29.

## Conclusions of Law

From the foregoing facts the Court decides:

1. That at the time of the collision between the USS Roustabout and libelants' vessel, Eastern Prince, the Roustabout was a duly commissioned naval vessel of the United States employed solely for naval tanker purposes, officered and manned by naval officers and crew and operated by the United States Navy and engaged in warlike operations.

2. That the collision and damage resulting therefrom to libelants' vessel, Eastern Prince, was a consequence of Roustabout's warlike operations.

3. That the said collision occurred by reason of the mutual fault of both vessels.

4. That libelants are entitled to judgment against respondent in the sum of $11,031.29 together with costs and disbursements.

Let judgment be entered accordingly.